# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JEFFREY GARRISON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 4:13 CV 1203 DDN |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the applications of plaintiff Jeffrey Garrison for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401, et seq. and for supplemental security income under Title XVI of that Act, 42 U.S.C. §§ 1381, et seq. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 8.) For the reasons set forth below, the decision of the Administrative Law Judge is affirmed.

## I. BACKGROUND

Plaintiff Jeffrey Garrison, born on August 29, 1960, filed applications for Title II and Title XVI benefits on December 29, 2010. (Tr. 102-14.) He alleged an onset date of disability of February 14, 2008, later amended to August 29, 2010, due to right and left knee injuries, left foot problems, and high blood pressure. (Tr. 124, 129.) Plaintiff's applications were denied initially on March 24, 2011, and he requested a hearing before an ALJ. (Tr. 46-52.) On May 16, 2012, following a hearing, the ALJ found plaintiff not disabled. (Tr. 10-15.) On May 1, 2013, the Appeals Council denied plaintiff's request for review. (Tr. 1-4.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. MEDICAL HISTORY

On July 6, 2010, plaintiff complained of swelling and pain in the left testicle that began six months earlier. Jacqueline Hayes, M.D., assessed unspecified testicular dysfunction and referred him to urology. (Tr. 198-99, 222.)

On August 9, 2010, plaintiff complained of continued testicular swelling and pain, which he rated as four of ten. Philip Asaro, M.D., noted plaintiff's elevated blood pressure. Plaintiff reported that he smoked one and a half packs of cigarettes per day and consumed table salt. Dr. Asaro assessed unspecified testicular dysfunction and elevated blood pressure. He also recommended screening for lipoid disorders and advised plaintiff to stop smoking. (Tr. 196-97.)

On August 27, 2010, plaintiff complained of slight testicular pain. Robert Maloney, M.D., assessed spermatocele.[1] He further recommended an ultrasound of the scrotum. (Tr. 210, 212.)

On September 8, 2010, plaintiff complained of hypertension, hyperlipidemia, elevated hemoglobin levels, and obesity. Dr. Asaro encouraged plaintiff to discontinue smoking and to lose weight by avoiding fats and sugars. He assessed unspecified testicular dysfunction, hypertension, hyperlipidemia, and obesity and prescribed lovastatin and amlodipine besylate.[2] (Tr. 194-95.)

On September 24, 2010, a testicular ultrasound revealed a possible small cyst on the right testis and a possible large papillary cystadenoma or epididymal cyst on the left epididymis. (Tr. 201.)

On October 15, 2010, Dr. Maloney assessed spermatocele and prescribed Darvocet.[3] He recommended exploratory surgery. (Tr. 211, 213.)

On December 28, 2010, Dr. Maloney performed a spermatocele excision on plaintiff and prescribed Motrin.[4] (Tr. 238-39.)

---

[1] Spermatocele is a cyst on the epididymis. Stedman's Medical Dictionary, 1799 (28th ed., Lippincott Williams & Wilkins 2006) ("Stedman").

[2] Lovastatin is to lower cholesterol. WebMD, http://www.webmd.com/drugs (last visited on April 17, 2014). Amlodipine is used to treat high blood pressure. Id.

[3] Darvocet was used to treat pain. WebMD, http://www.webmd.com/pain-management/news/20101119/darvon-darvocet-banned (last visited on April 17, 2014)

On February 28, 2011, Sarwath Bhattacharya, M.D., examined on plaintiff. Plaintiff, age forty, reported that he lived alone, obtained his GED, and had two pet dogs. He further reported that he last worked as a furniture mover in February 2008 but left due to a meniscus tear in his left knee. Plaintiff complained of hypertension but reported that he took no medication for the condition. He further complained of bilateral knee pain and reported that he injured both knees by lifting, which required arthroscopic surgery on both knees. He stated that his knees continue to ache, which prolonged standing exacerbated. He also complained of left foot swelling and pain that walking exacerbated. He reported that he injured his left foot in 2000 and in February 2009 but that he had not consulted a physician and took no medication for the condition. He further reported that he could walk for forty minutes before he must sit, stand for only thirty minutes, lift thirty pounds, and climb stairs. He reported that he watched television, cooked, laundered, and could drive. He took no medications and smoked one pack of cigarettes per day. He measured five feet, six inches, and weighed 242 pounds. The impression of Dr. Bhattacharya was elevated blood pressure, bilateral knee pain with bilateral status post surgery with unremarkable range of movement, obesity, and tobacco addiction. Left foot X-rays suggested pes planus and minimal spur formation, but revealed no evidence of fractures, dislocations, bone destruction, or degenerative change. (Tr. 241-46.)

On March 22, 2011, James Spence, Ph.D., submitted a Psychiatric Review Technique regarding plaintiff. He found no medically determinable impairments. (Tr. 251-61.)

On May 2, 2011, plaintiff complained of left foot pain, hypertension, hyperlipidemia, and scrotal cyst. Dr. Asaro assessed hypertension, hyperlipidemia, and ankle and foot joint pain, advised plaintiff to take lovastatin daily, and recommended that plaintiff discontinue smoking. He further recommended blood tests and referred plaintiff to podiatry. (Tr. 262-64.)

On May 18, 2011, plaintiff complained of sharp pain in the feet and legs that walking and standing exacerbated. He attributed the pain to a fall two years earlier. John Harness, DPM,

---

[4] Motrin is used to relieve pain. WebMD, http://www.webmd.com/drugs (last visited on April 17, 2014).

assessed ankle arthritis, atherosclerosis, and varicose veins. He recommended left foot and ankle X-rays and an ankle-brachial index test.[5] He further prescribed Ultram.[6] (Tr. 267-71.)

On June 16, 2011, left ankle and foot X-rays revealed minimal degenerative joint disease and soft tissue swelling. (Tr. 277.)

On September 14, 2011, plaintiff complained of edema and aches on both feet and ankles. Dr. Harness assessed varicose veins, recommended a venous reflux examination, and prescribed tramadol.[7] (Tr. 274-75.)

On November 28, 2011, plaintiff complained of hyperlipidemia, hypertension, and smoking. Dr. Asaro found plaintiff's liver function test results and blood pressure were satisfactory. He assessed hypertension and hyperlipidemia. (Tr. 281-82.)

On December 5, 2011, plaintiff complained of edema and aches on both feet and legs that walking exacerbated. Dr. Harness assessed edema and ankle sprain. He recommended that plaintiff use crutches, but plaintiff replied that he could not obtain them. Dr. Harness then recommended wrapping his ankle with Ace bandages. (Tr. 284-85.)

On January 30, 2012, plaintiff reported that medication relieved the ankle pain. (Tr. 286.)

On February 9, 2012, an ankle-brachial index test revealed no abnormalities. (Tr. 276.)

On March 5, 2012, plaintiff complained of daily leg cramps and aches. Dr. Harness assessed atherosclerosis, edema, ankle sprain, and varicose veins. He referred plaintiff to vascular surgery and observed that use of bandages improved the edema. (Tr. 287-88.)

On May 10, 2012, Dr. Harness filled out a Physical Residual Function Capacity Questionnaire regarding plaintiff. Plaintiff's diagnoses included atherosclerosis, varicose veins, and arthropathy of the ankle and foot, and his symptoms included edema, aching, dull pain, and irritability. Dr. Harness opined that plaintiff's symptoms would occasionally interfere with the

---

[5] An ankle-brachial index test is used to predict the severity of peripheral arterial disease in the legs. WebMD, http://www.webmd.com/heart-disease/ankle-brachial-index-test (last visited April 17, 2014).

[6] Ultram is used to relieve pain. WebMD, http://www.webmd.com/drugs (last visited on April 17, 2014).

[7] Tramadol is used to relieve pain. WebMD, http://www.webmd.com/drugs (last visited on April 17, 2014).

attention and concentration necessary for simple work tasks and that plaintiff could tolerate moderate work stress. He further found that plaintiff could walk two blocks, sit for at least six hours during a work day and continuously for forty-five minutes, and stand for four hours per day and continuously for five minutes. He found that plaintiff required work that would allow him to alternate positions and that plaintiff would need eight unscheduled breaks lasting less than twenty minutes per day. He found that plaintiff could occasionally carry twenty pounds, stoop, and climb stairs, could rarely crouch or squat, and could never climb ladders. He further found that plaintiff would miss four days per month as a result of his impairments. (Tr. 289-93.)

**Testimony at the Hearing**

The ALJ conducted a hearing on April 17, 2012. Plaintiff testified to the following. He is age fifty-one and obtained his GED. From 1996 to 1997, he worked at Haas Baking as a baker, which required him to lift twenty pounds. In 2000, he worked as a self-employed courier, which required driving and lifting up to fifty pounds. From 2002 to 2008, he worked as a mover for New World Vans. Meniscus tears in both knees lead to his departure and the filing of two workers' compensation claims. He filed a claim with the Second Injury Fund, which has not yet resolved. He also applied for unemployment benefits, which were denied because of his voluntary termination. (Tr. 22-26.)

Medications control his hypertension. He has shortness of breath. He continues to smoke but has cut back to under a pack of cigarettes per day. He has taken lovastatin for one and a half years to control his high cholesterol. He measures five feet, eight inches, and 230 pounds. His knee aches and pops as he walks. He has had no knee treatment due to lack of medical insurance. He has attempted to obtain a medical card but currently can only receive medical care at Grace Hill, an inexpensive clinic. He has ankle and foot pain daily. The left foot pain is more severe than the right foot pain. His feet swell intermittently, and his calves ache. He underwent testicular cyst removal in December 2010, which resolved the condition. (Tr. 26-20.)

He wraps his ankles with bandages, soaks them with ice, and elevates his feet two or three times per day to reduce pain. His physician recommended arches and stockings, but plaintiff

cannot afford them. He elevates his legs for twenty to thirty minutes at a time to relieve numbness and tingling. (Tr. 31-32.)

Vocational Expert (VE) John McGowen also testified at the hearing. The ALJ presented a hypothetical individual with plaintiff's age, education, and work experience, who could lift and carry twenty pounds occasionally and ten pounds frequently, required a sit/stand option, could occasionally climb stairs and ramps, stoop, kneel, crouch, and crawl, could never climb ropes, ladders or scaffolds, and needed to avoid concentrated exposure to extreme cold, unprotected heights, and vibration. The VE responded that such an individual could not perform plaintiff's past relevant work. However, the VE found that this individual could work as a parking enforcement officer, which is light work with 78,000 positions nationally and 570 positions in Missouri, and as a personal attendant, which is light, unskilled work with 141,000 positions nationally and 3,900 in Missouri. The VE stated that these jobs required frequent standing. (Tr. 32-35.)

### III. DECISION OF THE ALJ

On May 16, 2012, the ALJ found plaintiff not disabled. (Tr. 7-19.) At Step One of the prescribed regulatory decision-making scheme the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date, December 29, 2010. At Step Two, the ALJ found that plaintiff suffered from lower extremity edema, left foot spur formation, knee surgery, and obesity. (Tr. 12.)

At Step Three, the ALJ found that plaintiff had no impairment that met or was the medical equivalent of an impairment on the Commissioner's list of presumptively disabling impairments. (Tr. 13.)

The ALJ considered the record and found that plaintiff has the residual functional capacity (RFC) to lift or carry 20 pounds occasionally and 10 pounds frequently, required a sit/stand option, could occasionally stoop, crouch, kneel, crawl, and climb stairs and ramps, could never climb ladders, ropes, or scaffolds, and should avoid concentrated exposure to vibration, extreme cold, and unprotected heights. At Step Four, the ALJ found that plaintiff could perform no past relevant work. (Tr. 14.)

At Step Five, the ALJ found plaintiff capable of performing jobs existing in significant numbers in the national economy. (Id.)

## IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A); Pate-Fires, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Pate-Fires, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment. 20 C.F.R. § 416.920(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform his past relevant work (PRW). Id. § 416.920(a)(4)(iv). The claimant bears the burden of demonstrating he is no longer able to return to his PRW. Pate-Fires, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to his PRW, the burden shifts to the

Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. Id.; 20 C.F.R. § 416.920(a)(4)(v).

## V. DISCUSSION

Plaintiff argues that the ALJ erred by (1) failing to support the RFC determination with medical evidence and (2) by failing to capture the concrete consequences of plaintiff's impairment in the hypothetical question posed to the vocational expert.

**A. RFC Determination**

Plaintiff argues that the ALJ failed to support the RFC determination with medical evidence or opinion. However, in the written decision, the ALJ supported the RFC interpretation with medical evidence, including the opinion of Dr. Bhattachary, X-rays, and treatment notes. (Tr. 14, 242-46, 263, 273-74, 277, 288.)

Plaintiff also argues that the opinion of Dr. Harness constitutes new and material evidence and requires remand. Due to the timing of the submission and the failure of the ALJ to mention the opinion, plaintiff argues that the ALJ failed to consider Dr. Harness' opinion. The Commissioner concedes that the ALJ did not consider the opinion. (Doc. 20 at 10.) Subsequent to the ALJ hearing but before the Appeals Council denied review, plaintiff submitted the opinion of Dr. Harness to the Commissioner. (Tr. 1-3, 289-93.) "When the Appeals Council has considered new and material evidence and declined review, we must decide whether the ALJ's decision is supported by substantial evidence in the whole record, including the new evidence." Kitts v. Apfel, 204 F.3d 785, 786 (8th Cir.2000).

The court finds that substantial evidence supports the RFC determination. "[A] treating physician is normally entitled to great weight." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000). However, an ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. "An ALJ's failure to consider or discuss a treating physician's opinion that a claimant is disabled constitutes error where [] the record contains no contradictory medical

opinion." Prince v. Bowen, 894 F.2d 283, 285-86 (8th Cir. 1990). "[A] conclusory checkbox form has little evidentiary value when it cites no medical evidence, and provides little to no elaboration." Anderson v. Astrue, 696 F.3d 790, 794 (8th Cir. 2012). Moreover, an ALJ may properly discount opinions regarding limitations that a physician fails to document in treatment records or support with objective testing or reasoning. Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001).

Despite the ALJ's failure to consider Dr. Harness' opinion, substantial evidence supports the ALJ's decision. First, Dr. Bhattachary's opinion indicated a lesser degree of impairment, thereby contradicting the opinion of Dr. Harness. (Tr. 242-45.) Additionally, Dr. Harness submitted the opinion in checkbox form, citing no evidence and providing little elaboration regarding the alleged limitations. (Tr. 289-93.) Further, Dr. Harness did not detail such limitations in the treatment records, and objective tests, including X-rays and the ankle-brachial index test do not support them. (Tr. 276-77.) Moreover, plaintiff's function report contradicts the limitations expressed by Dr. Harness. (Tr. 155, 159.) Therefore, even considering the opinion of Dr. Harness, substantial evidence supports the RFC determination. Accordingly, plaintiff's argument is without merit.

**B. Vocational Expert Testimony**

Plaintiff argues that the ALJ erred by relying on the VE's response to a hypothetical question that failed to capture the concrete consequences of plaintiff's impairments. "Testimony based on hypothetical questions that do not encompass all relevant impairments cannot constitute substantial evidence to support the ALJ's decision." Hillier v. Social Sec. Admin., 486 F.3d 359, 366 (8th Cir. 2007). "Hypothetical questions should set forth impairments supported by substantial evidence on the record and accepted as true and capture the 'concrete consequences' of those impairments." Id.

In the ALJ's opinion, the ALJ relies on VE testimony given in response to the ALJ's hypothetical question. (Tr. 14-15.) The hypothetical question involved an individual with an RFC that the ALJ later found to be plaintiff's RFC. (Tr. 32-34.) Specifically, plaintiff argues that because substantial evidence did not support the RFC determination, the hypothetical question

encapsulating that determination failed to capture the concrete consequences of plaintiff's impairments. However, as discussed above, substantial evidence supports the RFC determination. Accordingly, the ALJ did not err by relying on the VE's response to the hypothetical question.

Plaintiff also argues that the VE testimony does not clearly indicate whether the VE considered the sit/stand option at the hearing. However, the hearing transcript reveals that the VE considered the sit/stand option. Specifically, following the VE's response to a hypothetical question that included the sit/stand option, the ALJ asked the VE, "And other than the sit, stand option, has your testimony been consistent with the DOT and Selected Characteristics of Occupations." (Tr. 34.) The VE replied, "Yes, I'm reading directly from those sources." (Id.) The VE's response implies that he testified regarding the sit/stand option.

Plaintiff further argues that the VE's testimony regarding the sit/stand option lacked a sufficient foundation. VE testimony should generally be consistent with the Dictionary of Occupational Titles (DOT). Policy Interpretation Ruling : Titles II & Xvi: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions, SSR 00-4P (S.S.A Dec. 4, 2000). When conflicts arise, ALJ must resolve conflicts between the testimony and the DOT "by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information." Id. The absence of information from the DOT constitutes a reasonable explanation for such conflicts. Id. The ALJ may rely on the testimony of a vocational expert. 20 C.F.R. § 404.1566(e).

The VE testified that the DOT did not include information regarding the sit/stand option. (Tr. 33.) Moreover, the VE's resume supported the ALJ's reliance on the VE as an expert. (Tr. 15, 86-88.) Therefore, the VE provided a reasonable explanation for deviating from the DOT, and the ALJ lawfully relied on and adequately laid the foundation for the testimony regarding the sit/stand option.

Accordingly the ALJ did not err by relying on the VE's testimony.

## VI.  CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed.  An appropriate Judgment Order is issued herewith.

　　　　　　　　　　　　　　　　　　/S/   David D. Noce　　　　　　　
　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

Signed on June 2, 2014.